**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KHALIF WARDLAW, : | |
| **Plaintiff,** : | |
| v. : | **CIVIL NO. 09-3981** |
| : | |
| CITY OF PHILADELPHIA, : | |
| : | |
| LIEUTENANT STEVEN ARCH, : | |
| *Individually and* : | |
| *in his Official Capacity,* and; : | |
| : | |
| JOHN/JANE DOES # 1–100, : | |
| **Defendants.** : | |
| : | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                      **March 21, 2011**

Plaintiff Khalif Wardlaw brings this action against Defendants City of

Philadelphia and Lieutenant Steven Arch, in his official and individual capacity,[1] alleging

discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.*,

and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. 951 *et. seq.*, infringement of his

First Amendment and Fourteenth Amendment rights, and breach of contract.  Before the Court

are Defendants' Motion to Dismiss the Second Amended Complaint [doc. no. 18], and  Plaintiff's

Opposition thereto [doc. no. 21].  For the reasons set forth below, Defendants' Motion will be

granted in part and denied in part.

---

[1]  Wardlaw has stipulated to the dismissal of claims against Lt. Arch in his individual capacity under Count I
(Title VII).  See Pl.'s Proposed Order Denying Defs.' Mot. to Dismiss Second Am. Compl. [doc. no. 21].

I. FACTUAL & PROCEDURAL HISTORY[2]

Wardlaw has been employed as a Police Officer by the Philadelphia Police Department for over eighteen years.[3] As a Muslim, Wardlaw wears a beard in accordance with the tenets of Islam.[4] That practice contravenes the Department's Directive No. 78 ("Directive No. 78"), which precludes Department employees from wearing a beard.[5] In 2006, after the Department refused Wardlaw's request to be excused from Directive No. 78, he submitted a charge of discrimination and retaliation with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").[6] The PHRC then issued a finding of probable cause and ordered Defendants to cease its discriminatory practices and accommodate Wardlaw's religious beliefs.[7] Alleging non-compliance with the PHRC finding, Wardlaw filed his first complaint against the City in this Court in 2006. Upon the agreement of the Parties to the first lawsuit,[8] Wardlaw v. City of Philadelphia[9] ("Wardlaw I"), this Court referred the matter to U.S. Magistrate Judge Sandra Carol Moore for a settlement

---

[2] The facts are taken from the complaint and the Plaintiff's Opposition to the Motion to Dismiss, and are accepted as true for the purposes of this Motion.

[3] Pl.'s Second Am. Compl. ("SAC") ¶ 1 [doc. no. 23].

[4] SAC ¶ 2.

[5] SAC ¶ 2.

[6] Pl.'s Response in Opp'n to Defs.' Mot. to Dismiss the Second Am. Compl. ("Pl.'s Opp'n") Ex. C [doc. nos. 22, 23].

[7] SAC ¶ 4; Pl.'s Opp'n Ex. C.

[8] Lieutenant Steven Arch was not a named party in Wardlaw I.

[9] Civ. No. 05-6575.

conference. After the conference, the Parties successfully reached a settlement agreement; under that agreement, Wardlaw was given a permanent, confidential exemption from Directive No. 78.[10]

Although the Department now permits Wardlaw to wear his beard, Wardlaw's current complaint alleges that since the settlement, Lt. Arch, one of his commanding officers, has subjected him to a "campaign of retaliation" for filing Wardlaw I.[11] Although Lt. Arch was not a party to Wardlaw I, in connection with the settlement agreement, Wardlaw withdrew a union grievance he had filed against Lt. Arch for alleged acts of discrimination prior to the settlement.[12] The alleged retaliatory actions of Lt. Arch include arbitrarily changing Wardlaw's job assignments, giving Wardlaw undesirable assignments, unfairly threatening Wardlaw with AWOL status, termination, and disciplinary action, subjecting Wardlaw to harassing investigations, withholding opportunities for assignments and advancement, and making derogatory statements about Wardlaw to other officers.[13] Wardlaw contends that Lt. Arch's retaliatory conduct is part of the Department's official custom or practice.[14]

In response to Lt. Arch's retaliatory actions, Wardlaw submitted written complaints to the City through official channels; when the city was unresponsive to those complaints, he cross-filed charges of discrimination with the PHRC and EEOC on June 3, 2008.[15]

---

[10] SAC ¶ 7; SAC Ex. 1.

[11] SAC ¶ 6; Pl.'s Opp'n at 6.

[12] SAC ¶ 23.

[13] SAC ¶¶ 26a–n.

[14] SAC ¶ 35.

[15] SAC ¶ 31–32; Pl's Opp'n Ex. D;

The EEOC issued Wardlaw a "Right to Sue" letter on May 28, 2009.[16] Wardlaw cross-filed another charge with the EEOC and PHRC on June 10, 2009;[17] the EEOC issued a separate "Right to Sue" letter for that charge on May 3, 2010.[18] Wardlaw filed his original Complaint in this matter on August 31, 2009; he filed the Second-Amended Complaint on May 21, 2010.

## II. STANDARD OF REVIEW

A complaint can be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has not presented "'enough facts to raise a reasonable expectation that discovery will reveal evidence' of [a] necessary element."[19] A court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[20] However, the court need not accept "bald assertions" or "legal conclusions" as true.[21] At this stage, the court does not determine whether the non-moving party will prevail, but whether it will be permitted to offer evidence in support of the claims in the complaint.[22]

---

[16] SAC ¶ 32; Pl.'s Opp'n Ex. E.

[17] Pl.'s Opp'n Ex. G;

[18] Pl.'s Opp'n at 6; Pl.'s Opp'n Ex. H.

[19] Phillips v. Cnty of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotations omitted).

[20] Id. at 233 (internal quotations omitted).

[21] In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429–30 (3d Cir. 1997).

[22] Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *4 (E.D. Pa. Jan. 23, 2008) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

This particular pleading standard, described in Federal Rule of Civil Procedure 8(a)(2) as "a short and plain statement of the claim showing that the pleader is entitled to relief"[23] has been addressed twice by the Supreme Court of the United States in recent years, first in <u>Bell Atlantic Corp. v. Twombly</u>[24] and then in <u>Ashcroft v. Iqbal</u>.[25] The <u>Twombly</u> Court articulated a "plausibility" standard that a plaintiff's factual allegations must to survive a motion to dismiss.[26] The Court described it as more than suspicion or speculation.[27] The <u>Iqbal</u> Court clarified that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[28]

## III. DISCUSSION

This Court has federal question jurisdiction over Wardlaw's claims alleging violations of 42 U.S.C. § 1983 and Title VII under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims for violations of the PHRA and common-law-breach-of-contract under 28 U.S.C § 1367, because the state law claims form part of the same case or controversy.

---

[23] Fed. R. Civ. P. 8(a)(2).

[24] 550 U.S. 544 (2007).

[25] 129 S. Ct. 1937 (2009).

[26] <u>Twombly</u>, 550 U.S. at 556.

[27] <u>Id.</u> at 555. The decision in <u>Twombly</u> retired the previous standard articulated in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), allowing dismissal if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

[28] <u>Iqbal</u>, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants move to dismiss all counts of Wardlaw's complaints. First, Defendants argue that Counts I and III of Wardlaw's complaint, which assert Title VII and PHRA claims, should be dismissed failure to exhaust administrative remedies. In addition, Defendants argue that Count II, in which Wardlaw asserts various Section 1983 claims, should be dismissed because: (1) Wardlaw fails to sufficiently allege that Defendants infringed his Fourteenth Amendment or First Amendment rights; (2) Wardlaw has failed to establish municipal liability under Monell v. New York City Department of Social Services;[29] and (3) any § 1983 claims based on conduct that occurred before September 1, 2007 are time-barred. Defendants further assert that Lt. Arch is qualifiedly immune from suit. Finally, Defendants argue that Wardlaw's breach of contract claims are barred because he cannot imply a duty of good faith and fair dealing into the Settlement Agreement.

A.    Counts I & III:  Failure to Exhaust

Defendants argue that Wardlaw failed to allege that he properly exhausted his Title VII and PHRC claims before filing the instant suit because he did not attach the EEOC/PHRC charges or the right to sue letters to his Second Amended Complaint. This argument fails for two reasons.

First, Wardlaw is not required to attach the EEOC/PHRC charges or the right-to-sue letters to his Second Amended Complaint.[30]  At this stage, Wardlaw's only burden is to

---

[29] 436 U.S. 658, 694–95 (1978).

[30] Balis v. Raltyline, No. 08-3456, 2009 WL 799277, at *4 n.2 (D.N.J. March 25, 2009) (holding that on a Motion to Dismiss, "the mere failure by plaintiff to provide Defendants with a copy of a right-to-sue letter does not warrant a dismissal of the Complaint for failure to state a claim upon which relief may be granted").

sufficiently *allege* exhaustion;[31] Wardlaw does so by alleging that he has filed various charges

with the PHRC and EEOC, that the EEOC mailed him a right-to-sue letter on May 29, 2009, and

that "all administrative prerequisites to suit have been fulfilled."[32]  In any case, the question is

moot because Wardlaw has submitted evidence (both EEOC right-to-sue letters[33] and PHRC

charges[34]) that he complied with the procedural requirements of both Title VII and the PHRC.[35]

Wardlaw has also sufficiently alleged that he has satisfied the PHRA's exhaustion

requirements.  A plaintiff claiming discrimination under the PHRA must first file an

administrative complaint with the PHRC.[36]  Because the EEOC and PHRC have a "work-sharing

agreement," plaintiffs may "cross-file" their claims with both agencies.[37]  By choosing to cross-

---

[31] See Gooding v. Warner-Lambert Co., 744 F.2d 354, 358 (3d Cir. 1984) (noting that a plaintiff need only allege the issuance of a right-to-sue letter to properly plead administrative exhaustion); see also Fed. R. Civ. Proc. 8(a) (noting that a pleading setting forth a claim for relief need only include a "short and plain statement of the claim showing that the pleader is entitled to relief"); Spidle v. Com. of Pa., Office of Budget, 660 F. Supp. 941, 944 (M.D. Pa. 1987) (analyzing Gooding to conclude that the plaintiff was only required to "allege generally that all conditions precedent to bringing suit have been satisfied").  But see N'Jai v. Floyd, 07-1506, 2009 WL 4823839, at *11 (W.D. Pa. Dec. 9, 2009) ("A plaintiff has an obligation to produce a right to sue letter as a prerequisite to maintaining a Title VII claim in federal court).

[32] SAC ¶ 32.

[33] Pl.'s Opp'n Exs. E & H.

[34] Pl.'s Opp'n Exs. D & G.

[35] The Court may consider this evidence without converting this Motion to Dismiss to a Motion for Summary Judgment because the charges and letters are undisputedly authentic and because Wardlaw's claims are based on those documents.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993); see also Arizmendi v. Lawson, 914 F. Supp. 1157, 1160–61 (E.D. Pa. 1996) (considering EEOC right to sue letter attached to defendant's motion to dismiss); Hilburn v. Dep't of Corr., No. 07-cv-6064, 2010 WL 703202, *12 (holding that it is proper to consider a right-to-sue letter attached to Plaintiff's opposition brief and the EEOC charge attached to Defendants' reply brief).

[36] See Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).

[37] Id. at 926 ("Under the worksharing agreement, a claim that is filed first with the EEOC can be processed by the EEOC, without being investigated as an initial matter by the PHRC."  In the absence of such an agreement, a claimant cannot file a charge with the EEOC in a state that provides an administrative remedy for employment discrimination, "unless the charge has been filed first with the appropriate state agency and either (1) 60 days have elapsed; or (2) the state agency has terminated its proceedings."); see also 42 U.S.C. §2000e-5(c).

file, the plaintiff is excused from filing directly with the PHRC, and the EEOC assumes responsibility for transmitting the complaint to the PHRC.[38]  Pennsylvania law grants the PHRC exclusive jurisdiction over PHRA claims for a period of one year in order to investigate, and, if possible, conciliate the claims.[39]  No right-to-sue letter is required in connection with PHRA claims, and after the expiration of one year, a complainant may bring suit regardless of whether or not he has received a letter from the PHRC.[40]

Here, Wardlaw cross-filed the first charge on June 8, 2008, and filed his original Complaint in this Matter over a year later, on August 31, 2009.  Because a year elapsed between the filing of the PHRC claim and his initial civil complaint, Plaintiff exhausted his administrative remedies with respect to his first charge.  Although the second EEOC/PHRC charge was filed one month prior to PHRC exhaustion,[41] a plaintiff is not required to exhaust his administrative remedies if "the acts alleged in the subsequent . . . suit are fairly within the scope of the prior . . . complaint, or the investigation arising therefrom."[42]  It is proper to permit "suits based on new

---

[38] Id. at 926 n.12; Lukus v. Westinghouse Elec. Corp., 419 A.2d 431, 452 (Pa. Super. Ct. 1980).

[39] 43 P.S. § 962(c); See Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001); Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 920 (Pa. 1989) ("[t]he legislative history of section 962(c) shows that the Legislature intended that the PHRC should have exclusive jurisdiction of a complaint alleging violations under the PHRA for a period of one year") (citing Lukus, 419 A.2d at 455.

[40] Tlush v. Mfrs. Res. Ctr, 315 F. Supp. 2d 650, 656 (E.D. Pa. 2002); Burgh, 251 F.3d at 471; Snyder v. Pa. Ass'n of Sch. Retirees, 566 A.2d 1235, 1242 (Pa. Super. Ct. 1989).

[41] Wardlaw's second retaliation charge was cross-filed between the EEOC and PHRC on June 9, 2009, but Plaintiff filed his Second Amended Complaint—which encompasses the Second Charge—less than a year later, on May 10, 2009.  Technically, therefore, Plaintiff did not exhaust his second PHRCA claim prior to filing his Second Amended Complaint.

[42] See Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996) (considering Title VII exhaustion).

acts that occur during the pendency of the case if a previous . . . case has been filed."[43]  Here, all of the retaliatory acts alleged in Wardlaw's second PHRC charge are within the scope of his prior PHRC complaint.

Even if the second PHRC charge was not within the scope of Wardlaw's first PHRC charge, and thus filed prematurely by inclusion in the Second Amended Complaint, that defect has been cured by the passage of time.  Courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one-year deadline expires during court proceedings.[44]  "Rather than dismiss[ing] [a] plaintiff's claim on a curable, technical defect," these courts "allow [the PHRC] claim to be decided on the merits."[45] This reflects the "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits."[46]  And although some courts have rejected the flexible approach when Plaintiffs have failed to make a good faith effort to exhaust

---

[43] Albright v. City of Phila., 399 F. Supp. 2d 575, 585 (E.D. Pa. 2005) (citation & quotations omitted) (describing the test to analyze the scope of EEOC claims); see also Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083–84 (3d Cir. 1995) (noting that the PHRA and Title VII are interpreted similarly).

[44] Schaefer v. Independence Blue Cross, Inc., No. 03-cv-5897, 2005 WL 181896, at *5 (E.D. Pa. Jan, 26, 2005).

[45] Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1258 (M.D. Pa. 1994); see also Santi v. Bus. Records Mgmt., No. 10-904, 2010 WL 3120047, at *6 (W.D. Pa. Aug. 9, 2010); McGovern v. Jack D's, Inc., No. Civ. A. 03-5547, 2004 WL 228667, at *8 (E.D. Pa. Feb.3, 2004) (granting plaintiff leave to amend complaint after one year period had elapsed); Reilly v. Upper Darby Twp., Civ. A. No. 2:09-02465-WY, 2010 WL 55296, at *3–4 (E.D. Pa. Jan.6, 2010); Schaefer v. Independence Blue Cross, Inc., No. Civ. A. 03-CV-5897, 2005 WL 181896 (E.D. Pa. Jan.26, 2005); Pergine v. Penmark Mgmt. Co., 314 F. Supp. 2d 486, 489–90 (E.D. Pa. 2004); Kozlowski v. Extendicare Health Servs., Inc., No. 99-4338, 2000 WL 193502, at *4 (E.D. Pa. Feb.17, 2000).

[46] See Gooding, 744 F.2d at 359–59.

their remedies as required by the PHRA, that is not the case here.[47]  Therefore, we find that

Plaintiff may maintain his PHRC claims in the current complaint.


B.  COUNT III: WARDLAW'S SECTION 1983 CLAIMS

Defendants move to dismiss Wardlaw's § 1983 claims, arguing that he has failed

to plausibly allege a deprivation of a constitutional right under either the First or Fourteenth

Amendments.

Section 1983 does not, by its own terms, create any substantive rights, but instead,

provides a remedy for the violation of federal constitutional or statutory rights.[48]  To state a § 1983

claim, a plaintiff must allege that the defendant, acting under color of state law, deprived him or

her of a right secured by the Constitution or the laws of the United States.[49]  Accordingly, "[t]he

first step in evaluating a section 1983 claim is to identify the exact contours of the underlying

right said to have been violated and to determine whether the plaintiff has alleged a deprivation of

a constitutional right at all."[50]  Here, Plaintiff alleges violations of his First and Fourteenth

Amendment rights.

---

[47] Kozlowski, 2000 WL 193502 at *4 (finding that the plaintiff acted in bad faith by failing to cooperate with the EEOC and by filing her initial federal complaint just over five months after filing her administrative complaint with the PHRC).  Here, when Plaintiff filed his Second Amended Complaint, only a month remained before his PHRC claims would have been exhausted.  Further, Plaintiff acted in good faith by complying with all of the other exhaustion requirements imposed by Title VII and the PHRA.  Therefore, we find Plaintiff attempted, in good faith, to exhaust his remedies under the PHRA.

[48] Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000); see also Baker v. McCollan, 443 US 137, 144 n.3 (1979).

[49] 42 U.S.C. § 1983; Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

[50] Kaucher, 455 F.3d at 423 (internal quotation omitted).

1.      *First Amendment Retaliation Claim*

Wardlaw alleges that Lt. Arch infringed his First Amendment rights by retaliating against him for filing lawsuits and discrimination complaints. To state a First Amendment Retaliation claim, a plaintiff must allege "(1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights,[51] and (3) that there was a causal connection between the protected activity and the retaliatory action."[52] Here, Defendant concedes that Plaintiff engaged in a protected activity by filing discrimination charges and Wardlaw I.[53] Lt. Arch argues, however, that Plaintiff's First Amendment retaliation claim fails because he has not sufficiently alleged a causal connection between the retaliatory conduct and the protected activity.

To establish a causal connection between retaliatory conduct and a protected activity, a plaintiff may allege (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, (2) a pattern of antagonism coupled with timing to establish a causal link; or (3) that evidence from the record as a whole supports an inference of causation.[54]

---

[51] Defendant does not argue that Plaintiff has failed to allege the second element, so the Court will not analyze the sufficiency of Plaintiff's allegations to show retaliatory conduct that would deter a person of ordinary firmness from exercising his or her rights. Notably, however, "[t]he effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006); see also O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006) (noting that "the threshold is very low").

[52] Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007).

[53] The filing of a non-frivolous lawsuit is protected activity pursuant to the First Amendment's petition clause. CA. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990).

[54] Schlegel v. Koteski, 307 F. App'x 657, 661–62 (3d Cir. 2009).

The Third Circuit has held that two days between a protected activity and an adverse activity is "unusually suggestive" of retaliatory motive, but that three months is not.[55] In his Complaint, Wardlaw alleges that Lt. Arch's discriminatory and retaliatory conduct began "[a]lmost immediately after the settlement of Wardlaw I," and has continued through the pendent litigation.[56] However, Plaintiff's first EEOC/PHRC charge, which alleged retaliation for the filing of Wardlaw I, alleges that the first retaliatory act did not occur until February 2008—more than a year after the settlement agreement was reached. Similarly, Wardlaw's second EEOC/PHRC charges, which allege continuing retaliation after the filing of the Second Amended Complaint on June 3, 2008, do not allege that Lt. Arch engaged in retaliatory behavior until February 2, 2009. Accordingly, the temporal proximity between the protected activities and the allegedly retaliatory action is not unusually suggestive.

However, viewing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged a pattern of antagonism to establish a plausible causal link under Twombly. Although Plaintiff did not specifically name Lt. Arch as a defendant in his first lawsuit, he filed a union grievance against Lt. Arch, which was withdrawn in connection with the Wardlaw I settlement.[57] Lt. Arch has instigated all of the alleged retaliatory actions against the Plaintiff, and those retaliatory acts—even if they did not commence until several months after

---

[55] See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (19 months not unduly suggestive); LeBon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (3 months not unduly suggestive); see also Gaston v. U.S. Postal Serv., Office of Inspector Gen'l, No. 05-cv-5286, 2008 WL 2682850, at *3 (D.N.J. July 2, 2008) (no "unusually suggestive temporal proximity" between protected activity and defendant's adverse action where nearly four months elapsed between Plaintiff entering into a settlement agreement and defendant's adverse action).

[56] SAC ¶ 25.

[57] SAC ¶ 23.

Wardlaw filed his various lawsuits—have tended to occur in clusters.  As the Court finds that these allegations raise a plausible First Amendment retaliation claim against Defendants at this early stage in this case, Defendants' Motion to Dismiss for failure to state a claim for retaliation under the First Amendment is denied.

2.      *Due Process Claims*

Defendant argues that Wardlaw fails to sufficiently allege either a substantive or procedural due process violation.  We agree.

a.      *Procedural Due Process*

To state a claim under § 1983 for deprivation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[58]  Here, Wardlaw asserts that the Defendants infringed his property interest in his continued employment as a police officer by assigning him to less-desirable details, unfairly disciplining him, and withholding the opportunity for advancement.[59]

State law determines whether an individual has a property interest in government employment.[60]  The Third Circuit recognizes that under Pennsylvania law, municipal police

_____

[58] Hill v. Burough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

[59] Pl.'s Opp'n at 22–23.

[60] Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005).

officers have a property interest in continued employment.[61]  That interest can be infringed

through termination,[62] suspension, or reduction in rank.[63]  Pennsylvania law does not, however,

confer a protected property interest in the "opportunity for advancement" upon officers.[64]

Here, Wardlaw alleges neither termination, suspension, nor reduction in rank.  At

best, his pleadings indicate an argument that he was constructively demoted through assignments

to work generally "not provided to veteran Police Officers."[65]  Although a plaintiff may allege

"constructive demotion" even if no actual reduction in rank is indicated by a change in job title,

Wardlaw fails to do so here.[66]  Where, as here, the officer's job title has not been altered, the

Court "must look to other traditional indicia of change in rank to determine whether the

employee's rank constructively has been reduced."[67]  Although "[a] change in pay is the most

obvious [indicia] . . . . [o]ther indicia may be the imposition of duties normally given to

employees of a lower rank, substantially reduced responsibilities, termination of privileges of

---

[61] Clark v. Twp. of Falls, 890 F.2d 611, 618 (3d Cir. 1989) (analyzing the Pennsylvania Police Tenure Act, 53 Pa. Cons. Stat. Ann. § 812 to conclude that Pennsylvania state law grants police officers a legitimate claim of entitlement in continuing employment, free some suspension or reduction in rank); see also, Bartal v. Borough of Laureldale, 515 F. Supp. 2d 556, 561 (E.D. Pa. 2007) (analyzing Borough Code of Pennsylvania).

[62] Because Plaintiff does not allege constructive discharge, we do not consider that argument.

[63] Clark, 890 F.2d at 617–18.

[64] The Pennsylvania Police Tenure Act, which creates Wardlaw's property interest in continued employment, states that "No person employed as a regular full-time police officer in any police department . . . shall be *suspended*, *removed* or *reduced in rank* . . . for religious, racial, or political reasons."  53 Pa. Cons. Stat. Ann. § 812.  It does not protect a police officer's interest in the opportunity for advancement.

[65] SAC ¶ 26(j).

[66] Clark., 890 F.2d at 618.

[67] Id.

rank, and whether the changes or restrictions are temporary."[68]  In cases where the officer retains

his rank and salary, and "was not left without any job functions," the Third Circuit has refused to

find any constructive reduction in rank, regardless of whether the officer "clearly did not like the

changes in his duties" and had experienced "genuine distress."[69]

Here, Wardlaw does not allege that his pay was reduced, or that he was deprived of

all real job responsibilities.  Although the alleged retaliatory conduct may contravene the statutory

protections of the PHRC and Title VII, it does not rise to the level of a constitutional violation.

As we find that Wardlaw fails to allege a sufficient deprivation to invoke the protections of

procedural due process, it is unnecessary to consider whether adequate procedural due process

was provided.

b.    *Substantive Due Process*

Plaintiff argues that his substantive due process rights were violated because Lt. Arch's

conduct infringed upon his First Amendment rights to freedom of speech and religion.[70]  Because

"claims governed by explicit constitutional text may not be grounded in substantive due process,"

however, Plaintiff's claim fails.[71]  As discussed *supra*, the First Amendment provides an explicit

---

[68] Id.

[69] Id.; see also Cotner v. Yoxheimer, No. 07-cv-1566, 2008 WL 2680872, at *12 (M.D. Pa. July 2, 2008) (finding that plaintiff, who retained his rank and salary, and "despite losing some of his duties, held something other than a sinecure," was not constructively demoted).

[70] Pl.'s Opp'n at 17.

[71] Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir. 1998); see also Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing those claims.'") (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

textual source of constitutional protection to Plaintiff, so any reliance on the substantive component of the Due Process Clause is misplaced. Thus, the Court will treat Wardlaw's claim as arising only under that "explicit textual source," and will not conduct a duplicative analysis of this claim under the Fourteenth Amendment.

### 3. *Equal Protection Claims*

Finally, Defendants argue that Plaintiff has failed to allege an equal protection violation because he has not alleged that he was treated differently because he is a Muslim. Defendants' argument is partially correct. To sustain a successful Equal Protection claim for discrimination under §1983, a plaintiff must prove the existence of purposeful discrimination, and demonstrate that he was treated differently from similarly situated individuals.[72] But here, although Plaintiff states in his response to Defendants' Motion to Dismiss that, as a Muslim, he is a member of a recognized protected class, he does not allege that he was retaliated against on that basis. Therefore, although nominally stating a discrimination claim under § 1983, Plaintiff's allegations solely state a retaliation claim.[73] Specifically, he avers that Defendants' retaliatory actions were "because of Plaintiff's prior lawsuit protecting his legal right to religious freedom, and to retaliate for Plaintiff's protection of his civil rights." As the Third Circuit has observed,

---

[72] Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992).

[73] To state a § 1983 claim of discriminatory treatment, Plaintiff must allege: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973); see also, Stewart v. Rutgers, 120 F.3d 426, 431–32 (analyzing Section 1983 claims for discrimination under the McDonnell-Douglas framework). Here, because Plaintiff has failed to allege the fourth element, he has failed to sufficiently allege discrimination under McDonnell-Douglas.

"[a] pure or generic retaliation claim [] simply does not implicate the Equal Protection Clause."[74] Because we find that plaintiff has merely rephrased his First Amendment retaliation claim here, we will also dismiss his Equal Protection claim.

### 4. Municipal Liability

Wardlaw alleges that the City of Philadelphia violated his constitutional rights by having an official policy or custom of retaliating against police officers who file civil rights complaints against their superior officers.[75]  It is well-settled that municipalities and other local governments may not be held liable under § 1983 for the acts of their employers under a theory of *respondeat superior* or vicarious liability.[76]  A municipality may, however, be held liable "when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom."[77]  Here, the City claims that Wardlaw has failed to allege an official policy or custom, and instead relies upon conclusory statements about an official policy or custom without sufficient factual pleadings.[78]

---

[74] Thomas v. Ind. Twp., 463 F.3d 285, 298 n.6 (3d Cir. 2006) (quoting Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997); see also Stubbs v. Nutter, No. 10-3200, 2010 WL 3421015, at *3 (E.D. Pa. Aug. 30, 2010) (dismissing plaintiff's Equal Protection claim because it simply restated his First Amendment claim); O'Fee v. City of Phila., No. 09-cv-2724, 2009 WL 3172759, at *4 (E.D. Pa. Oct. 2, 2009) ("because we find that [plaintiff] has merely rephrased his First Amendment retaliation claim, we will dismiss his Equal Protection claim").

[75] SAC ¶¶ 35–40; Pl.'s Opp'n at 28.

[76] Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978).

[77] Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell, 436 U.S. at 691).

[78] Mot. to Dismiss at 10.

In order to properly allege municipal liability, Wardlaw must "identify a custom or policy, and specify what exactly that custom or policy was."[79]  A policy is an official proclamation or edict of a municipality;[80] a custom is an act that, "though not authorized by law," is so "permanently and well-settled' as to virtually constitute law.[81]  Under either the policy or custom approach, "it is incumbent upon [the] plaintiff to show that a policy maker is responsible either for the policy or, through acquiescence, for the custom."[82]

There are three scenarios in which a government employee's actions are deemed to result from a policy or custom of a municipality: (1) when an officer or entity officially promulgates a policy statement, and the employee's act is an implementation of that policy; (2) when the act of the policymaker[83] violates federal law; and (3) when a policymaker fails to act affirmatively, despite the obvious need for action to control agents of the government.[84]

This matter implicates the third scenario.  Here, Wardlaw has not alleged any "official proclamation, policy or edict" by a decisionmaker with final authority to establish municipal policy.  Indeed, he acknowledges that the City has an official written policy against

---

[79] McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009).

[80] Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

[81] Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).

[82] Andrews, 895 F.2d at 1480; Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir. 2007); Beck, 89 F.3d at 971.

[83] The question of who is a "policymaker" is a question of state law.  Andrews, 895 F.2d at 1481.  The Third Circuit, after examining Pennsylvania state law, has concluded that the Police Commissioner is a policymaker. Id.

[84] Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

discrimination or retaliation on the basis of religion or civil rights.[85]  Instead, he avers that the "persons controlling the Police Department, including the Police Commissioner, are aware of this longstanding custom and practice" and have allowed it to continue.[86]

To succeed on this theory, Wardlaw must allege a "plausible nexus" or "affirmative link" between the custom and the deprivation of constitutional rights.[87]  "A sufficiently close causal link between . . . a known, but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom."[88]

Here, Wardlaw alleges a series of incidents where Lt. Arch engaged in retaliatory conduct.  He further alleges that the Department, including its Police Commissioner, was on notice of Lt. Arch's retaliatory behavior by written complaints, but permitted it to continue, thereby establishing a policy or custom.  At this juncture in the litigation, accepting the factual allegations as true, Wardlaw has adequately alleged a custom of First Amendment retaliation.[89] He has alleged specific acts by Lt. Arch which violated his First Amendment rights, and has alleged continuing retaliatory acts in violation of those rights subsequent to Wardlaw's

---

[85] SAC ¶ 39.

[86] SAC ¶ 37.

[87] Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

[88] Id. at 851.

[89] See also, Davis-Heep v. City of Phila., No. 09-5619, 2010 WL 1568502, at *7 (Apr. 19, 2010) (permitting the employee to establish the existence of a custom through the discovery process, where former employee alleged that the city's policy was to retaliate against its employees for exercising their First Amendment rights).

submission of written complaints through official channels in the police department. Accordingly, he has sufficiently alleged municipal liability.

     5.     *Statute of Limitations on § 1983 claims*

Defendants argue that any of Wardlaw's § 1983 claims premised on conduct prior to September 1, 2007 are barred by the two-year statute of limitations applicable to § 1983 claims in Pennsylvania.[90]  In response, Plaintiff argues that his allegations fit into the continuing violations doctrine, which tolls the statute of limitations if the offending acts are part of a continuing practice.

Though the statute of limitations for a § 1983 claim is borrowed from state law, when a § 1983 claim accrues is governed by federal law.  Accrual occurs "when the plaintiff has a 'complete and present cause of action[,]' that is, when 'the plaintiff can file suit and obtain relief.'"[91]  Under the continuing violations doctrine, an action is timely filed so long as the defendant's last act in a continuing practice is within the limitations period.[92]  The focus of the continuing violations doctrine "is on the affirmative acts of the defendants."[93]  In order to invoke the continuing violation theory, the Plaintiff must allege that: "(1) at least one act occurred within

---

[90] <u>Osei-Afriyie v. Med. Coll. of Pa.</u>, 937 F.2d 876, 885 (3d Cir. 1991).  State law controls which statute of limitations is applied in a § 1983 action.  <u>See e.g.</u>, <u>Elliot Reihner Siedzikowksi & Egan, P.C. v. Pa. Empl. Benefit Trust Fund</u>, 161 F. Supp. 2d 413, 420 (E.D. Pa. 2001) <u>aff'd</u> 29 F. App'x 838 (3d Cir. 2001).  In Pennsylvania, a § 1983 claim is subject to a two-year statute of limitations.  <u>Id.</u> at 421.

[91] <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007).

[92] <u>Cowell v. Palmer Twp.</u>, 263 F.3d 286, 292 (3d Cir. 2001).

[93] <u>Id.</u> at 293.

the filing period; and (2) the [violation] is not the occurrence of 'isolated or sporadic acts' of intentional [wrongdoing] but a persistent, ongoing pattern."[94]

Here, Plaintiff has alleged a pattern of retaliatory behavior beginning in early 2007, shortly after the settlement of Wardlaw I, and increasing in antagonism throughout the pendency of this lawsuit. Therefore, the Court will deny Defendants' motion to dismiss Plaintiff's § 1983 claims premised on conduct that occurred on or before September 1, 2007.

C.    COUNT IV: BREACH OF CONTRACT/BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Wardlaw alleges that the City has breached the February 12, 2007 Settlement Agreement by failing to implement its terms in a good faith manner and in a mode of fair dealing.[95] In response, the City contends that Wardlaw cannot read an implied duty of good faith into the Settlement contract because he has independent bases to vindicate the alleged breach through Title VII, PHRA, and § 1983.

The issue of whether Plaintiff may state a breach-of-contract claim on the basis of an implied covenant of good faith and fair dealing is a question of state law.[96] To support a claim for a breach of contract, a plaintiff must allege (1) the existence of a contract; (2) a breach of a

---

[94] Swift v. McKeesport Hous. Auth., 726 F. Supp. 2d 559, 568–69 (W.D. Pa. 2010) (internal quotations omitted).

[95] SAC ¶ 58.

[96] Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 701 (3d Cir. 1993), overruled on other grounds, UA Theatre Circuit v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003).

duty imposed by the contract; and (3) resultant damage.[97]  Here, Wardlaw has properly alleged the

existence of a contract—the Settlement Agreement—and resultant damage.[98]  He has further

alleged that this agreement contains an implied duty of good faith and fair dealing, which the City

breached by engaging in "adverse, punitive, and retaliatory acts" against Plaintiff.[99]

Whether or not these allegations are sufficient to plead a claim of breach of

contract depends on whether the Settlement Agreement contains an implied covenant of good

faith and fair dealing.  Because the Pennsylvania Courts have not resolved when it is appropriate

to permit allegations of breach based on an implied covenant of good faith and fair dealing, this

Court is bound by the Third Circuit's interpretation of Pennsylvania law.[100]  In Parkway Garage,

Inc. v. City of Philadelphia, the Third Circuit concluded that "under Pennsylvania law, every

contract does not imply a duty of good faith."[101]  Specifically, the court stated that "we predict that

the Pennsylvania Supreme Court would not extend the limited duty of good faith to a situation . . .

in which there already exists an adequate remedy at law."[102]  Based on that conclusion, the court

vacated the jury's finding that the defendant had breached an implied duty of good faith and fair

---

[97] Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 580 (Pa. Super. 2003), appeal denied, 578 A.2d 313 (2004).

[98] SAC ¶ 59.

[99] SAC ¶ 58.

[100] Leder v. Shinfeld, 609 F. Supp. 2d 386, 400 (E.D. Pa. 2009) (examining Pennsylvania state law cases and concluding that the question of whether an agreement contains an implied covenant of good faith and dealing "has been a source of confusion and disagreement among Pennsylvania and federal courts in recent years").

[101] Parkway Garage, 5 F.3d at 702.

[102] Id.

dealing, ruling that the Plaintiff was able to recover under 42 U.S.C.§ 1983 based upon identical facts.[103]

The facts at hand are analogous to those in Parkway Garage.  Plaintiff has three independent avenues to vindicate his rights: Title VII, 42 U.S.C. § 1983, and the PHRA. Wardlaw's allegations of violations under each of those claims are substantially identical to those supporting his breach-of-contract claim.  Therefore, Plaintiff's claim for breach of an implied duty of good faith and fair dealing must be dismissed.

D.     CLAIMS AGAINST LT. ARCH: OFFICIAL CAPACITY & QUALIFIED IMMUNITY

1.     *Official Capacity*

Defendants move to dismiss all claims against Lt. Arch because a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents.[104] Accordingly, "where a suit is brought against a public officer in his official capacity, the suit is

---

[103] Id.; see also Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 92 (3d Cir. 2000) (affirming Parkway Garage and noting that "In view of these precedents, we believe that if a plaintiff alleging a violation of the implied covenant of good faith also were to file a claim for fraud based on the same set of facts, Pennsylvania courts would likely decline to proceed with the claim alleging bad faith . . . . Such an approach limits the use of the bad faith cause of action to those instances where it is essential."); see also Freemont v. E.I. DuPont DeNemours & Co., 988 F. Supp. 870, 874–75 (E.D. Pa. 1997) (applying the holdings of Parkway Garage & Northview Motors); Chester Perfetto Agency, Inc. v. Chubb & Son, No. 99-3492, 1999 WL 972010, at *3–5 (E.D. Pa. Oct. 21, 1999) (same); Rho v. Vanguard OB/GYN Assocs., P.C., No. 98-1673, 1999 WL 228993, at *6–7 (E.D. Pa. Apr. 15, 1999) (same); Toys "R" Us-Penn, Inc. v. Discovery Zone, Inc., No. 95-2534, 1996 WL 47980, at *6–7 (E.D. Pa. Feb. 6, 1996) (same).

[104] Brandon v. Holt, 469 US 464, 471–72 (1985); see also Kentucky v. Graham, 473 U.S. 159, 165–68 (1985) (clarifying the distinction between personal- and official-capacity suits by explaining that "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.").

treated as if the suit were brought against the governmental entity of which he is an officer." [105]

Thus, because of the inherent redundancy in naming as defendants both the City of Philadelphia

and Lt. Arch in his official capacity, we will dismiss all claims against Lt. Arch in his official

capacity.

### 2. *Qualified Immunity*

Defendants argue that any claims against Lt. Arch in his individual capacity should

be dismissed because Lt. Arch is entitled to qualified immunity.[106]  Government officials have

qualified immunity from suit so long as "their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."[107]  Though

qualified immunity is an affirmative defense, it should be addressed at the earliest possible stage

in litigation.[108]  However, "qualified immunity will be upheld on a 12(b)(6) motion only when the

immunity is established on the face of the complaint."[109]

The first inquiry requires the Court to decide whether the facts plaintiffs have

alleged constitute a violation of a constitutional right.[110]  If a constitutional violation is adequately

---

[105] See Cuvo v. De Biasi, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming the district court's dismissal of claims against officers in their official capacities because "the suit against the officers in their official capacities is redundant."); Mitros v. Cooke, 170 F. Supp. 2d 504, 506 (E.D. Pa. 2001) (citing Holt, 469 U.S. at 471–72).

[106] Defs.' Mot. to Dismiss at 14–15.

[107] Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[108] Thomas, 463 F.3d at 291 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

[109] Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (citations and internal quotation marks omitted).

[110] Pearson v. Callahan, 129 S.Ct. 808, 815 (2009).

alleged, the court must then determine whether the claimed right was "clearly established" at the time of the alleged violation.[111]  Here, as discussed *supra*, the complaint has clearly alleged that Lt. Arch has engaged in a campaign of harassment and intimidation in retaliation against Wardlaw for exercising his First Amendment rights.[112]

As Wardlaw has alleged a violation of a constitutional right, the Court must next determine whether his right to be free of retaliation was clearly established.  We conclude that the right to be free from retaliation for exercise of First Amendment rights is a clearly-established right.[113]  A right is clearly established if there is "sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited."[114]  And the Third Circuit has noted that "[t]he Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of his First Amendment Rights."[115]  Thus, because Wardlaw has alleged a violation of a clearly established

_____

[111] Id. (noting that the order of these inquiries, though often advisable, is not mandatory); see also Children First Found., Inc. v. Legreide, 373 F. App'x. 156, 159 (3d Cir. 2010).

[112] Because we have already concluded, *supra*, that Wardlaw fails to allege constitutional violations under the Fourteenth Amendment, we do not address those claims in the qualified immunity analysis.

[113] See Crawford-El v. Britton, 523 U.S. 574, 592 (1998); Perry v. Sindermann, 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, . . . [i]t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests - especially his interest in freedom of speech."); Anderson v. Davilia, 125 F.3d 148, 160 (3d Cir. 1997) ("The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of his First Amendment rights.").

[114] Wilson v. Zielke, 382 F. App'x. 151, 153 (3d Cir. 2010) (quoting McKee v. Hart, 436 F.3d 165, 171 (3d Cir. 2006)).

[115] Anderson, 125 F.3d at 160 (3d Cir. 1997); see also White v. Napoleon, 897 F.2d 103, 111–12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983.").  Moreover, the Court of Appeals has stated that "it can never be

constitutional right, Lt. Arch is not entitled to qualified immunity on Wardlaw's First Amendment claims.

With respect to qualified immunity under the PHRA, because the Pennsylvania legislature has waived the Commonwealth's sovereign immunity to claims asserted under the PHRA, that immunity is not available to shield officers sued in their individual capacities from PHRA claims.[116] Further, under Title VII, a public official may be sued only in his official capacity; thus the doctrine of qualified immunity has no place here because it only protects against personal liability.[117]

## IV. Conclusion

Based on the foregoing discussion, the Court finds that Plaintiff has failed to sufficiently allege violations of his Fourteenth Amendment rights or a breach of contract under Pennsylvania law. Accordingly, Count II of Plaintiff's complaint is dismissed in part, and Count IV is dismissed. A Plaintiff has sufficiently alleged exhaustion under Count I and III, those claims shall remain.

An appropriate Order follows.

---

objectively reasonable for a government official to act with the intent that is prohibited by law." Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006).

[116] See Burton v. Pa. Bd. Probation & Parole, No. 02-2573, 2002 WL 1332808, at *8 (E.D. Pa. June 13, 2002); Irizarry v. Pa. Dep't of Transp., No. Civ A. 98-6180, 1999 WL 269917, at *4 (E.D. Pa. Apr. 19, 1999); Fitzpatrick v. Commonwealth of Pa. Dep't of Transp. 40 F. Supp. 2d 631, 635–36 (E.D. Pa. 1999); see also Mansfield State College v. Kovich, 407 A.2d 1387, 1388 (Pa. Cmwlth. 1979) (holding that the PHRA waives the Commonwealth's sovereign immunity, thus allowing it to be sued under that statute in state court).

[117] In re Montgomery Co., 215 F.3d 367, 372–73 (3d Cir. 2000), cert. denied, 531 U.S. 1126 (2001). In recognition of this rule, Plaintiff has stipulated to the dismissal of Lt. Arch in his individual capacity under Count I.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **KHALIF WARDLAW,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL NO. 09-3981** |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| | : | |
| **LIEUTENANT STEVEN ARCH,** | : | |
| *Individually and* | : | |
| *in his Official Capacity,* and; | : | |
| | : | |
| **JOHN/JANE DOES # 1–100,** | : | |
| **Defendants.** | : | |

## ORDER

**AND NOW,** this 21st day of March, 2011, upon consideration of Defendants' Motion to Dismiss the Second Amended Complaint [Doc. No. 18], it is hereby **ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** Count IV of Plaintiff's complaint is **DISMISSED**, as are Count II's § 1983 claims for Fourteenth Amendment violations. Counts I and III remain; Count II's § 1983 claims for First Amendment violations also remain, for the reasons set forth in the attached Memorandum option.

The Clerk is **DIRECTED** to mark the docket in this matter as terminating Lt. Arch in his Official Capacity.

It is so **ORDERED**.

BY THE COURT:

/S/ Cynthia M. Rufe
**HON. CYNTHIA M. RUFE**